[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12210
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cr-00032-WKW-WC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY DON NORTHCUTT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 7, 2014)

Before MARCUS, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

Terry Don Northcutt appeals his 180-month sentence for possession of a

firearm as a felon and armed career criminal, in violation of 18 U.S.C. § 922(g)(1),

924(e)(1).  On appeal, Northcutt argues that: (1) his plea agreement's sentence-appeal waiver is invalid; (2) he did not qualify for a sentence enhancement under the Armed Career Criminal Act ("ACCA") because the district court erred by relying upon inaccurate and unreliable documents to establish the fact of his predicate convictions; (3) during sentencing, his Fifth, Sixth, and Eighth Amendment rights were violated; and (4) his sentence is substantively unreasonable.  After careful review, we affirm as to the first two claims, and dismiss the last two claims.

We review the validity of a sentence-appeal waiver de novo.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).  We also review de novo whether a conviction qualifies for the purpose of applying the ACCA to enhance a defendant's sentence.  United States v. Day, 465 F.3d 1262, 1264 (11th Cir. 2006).  We review findings of fact for clear error.  United States v. Wilson, 183 F.3d 1291, 1300 n.16 (citation omitted).

A sentence-appeal waiver will be enforced if it was made knowingly and voluntarily.  United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993).  "[I]n most circumstances, for a sentence appeal waiver to be knowing and voluntary, the district court must have specifically discussed the sentence appeal waiver with the defendant during the Rule 11 hearing."  Id. at 1351.  We have also specifically

rejected the view "that an examination of the text of the plea agreement is sufficient to find the waiver knowing and voluntary." Id. at 1352-53. Nevertheless, we have enforced an appeal waiver where "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily." United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001). Moreover, Rule 11 of the Federal Rules of Criminal Procedure contains a harmless error provision, and errors during the plea colloquy may be harmless in circumstances where "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Bushert, 997 F.2d at 1351; see also Fed.R.Crim.P. 11(h).

But even for a sentence-appeal waiver made knowingly and voluntarily, there may be limits on the type of claims that may be waived. See Johnson, 541 F.3d at 1068 (recognizing that "an effective waiver is not an absolute bar to appellate review"). In Bushert, we left open the question of whether a sentence-appeal waiver would be enforced when a defendant wished to appeal a sentence that exceeded the statutory maximum. Bushert, 997 F.2d at 1351 n.18 (noting that "[i]t is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute").

3

Under the ACCA, a defendant who is convicted under 18 U.S.C. § 922(g) faces a maximum sentence of 10 years' imprisonment.  18 U.S.C. §§ 922(g), 924(a)(2).  The ACCA raises the maximum sentence to one of life imprisonment and also imposes a 15-year mandatory-minimum sentence for defendants who have three prior convictions for violent felonies.  18 U.S.C. § 924(e)(1); see United States v. Brame, 997 F.2d 1426, 1428 (11th Cir. 1993).

Here, the appeal waiver provided that the defendant "expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence.  Defendant further expressly waives the right to appeal the conviction and sentence on any other ground, and waives the right to attack the conviction and sentence in any post-conviction proceeding . . . .  This waiver does not include the right to appeal or seek collateral review on the ground of ineffective assistance of counsel or prosecutorial misconduct."  The plea agreement further provided that if Northcutt was "determined to be an Armed Career Criminal, pursuant to Title 18 U.S.C. § 924(e), a sentence of [15] years . . . is an appropriate sentence in this case.  Should the defendant be determined not to be an Armed Career Criminal, . . . the government agrees that a sentence at the bottom of the applicable guideline range, as determined by the Court at sentencing, is appropriate."

4

Because the record makes clear that Northcutt understood the full significance of this language in the plea agreement, Northcutt knowingly and voluntarily agreed to his sentence-appeal waiver. First, the record shows that Northcutt understood the specific terms in the waiver provision itself -- among other things, the magistrate at the plea colloquy accurately explained how, as part of his plea agreement, Northcutt had agreed to waive his right to appeal his sentence except on the grounds of ineffective assistance of counsel or prosecutorial misconduct. Northcutt then told the magistrate that he understood those terms. The magistrate later confirmed with Northcutt that he was entering the plea agreement of his own free will.

Although the court failed to tell Northcutt that he potentially faced a 15-year minimum sentence under the agreement, this error was harmless because the record shows that Northcutt had read and understood his plea agreement's terms. Bushert, 997 F.2d at 1351; see also Fed.R.Crim.P. 11(h). Further, during the sentencing hearing, Northcutt's counsel agreed with the government that the plea agreement called for a 15-year sentence should Northcutt be found an armed career criminal. After the objections to the ACCA enhancement had been overruled, Northcutt's counsel then asked the court to "follow the provisions as outlined in the plea agreement" by issuing a sentence no greater than 15 years.

5

Because Northcutt's sentence-appeal waiver is valid, we affirm as to this issue and dismiss the majority of his claims on appeal. We need only address one remaining argument -- whether the district court erred in enhancing Northcutt's sentence under the ACCA, which raised the minimum sentence he faced above the otherwise applicable statutory maximum. Bushert, 997 F.2d at 1351 n.18; see also Brame, 997 F.2d at 1428. However, we can discern no error in the district court's ACCA determination. As we've mentioned above, the ACCA provides that an individual convicted under § 922(g) is subject to a mandatory minimum 15-year sentence if he has three previous federal or state convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Section 924(e) defines a "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

6

18 U.S.C. § 924(e)(2)(B).  Within the definition of "violent felony," the term "'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person."  Johnson v. United States, 559 U.S. 133, 140 (2010) (emphasis omitted).  Crimes covered by the "residual clause," § 924(e)(2)(B)(ii), include any offense that presents a serious potential risk of physical injury to another.  Sykes v. United States, 564 U.S. ___, 131 S.Ct. 2267, 2273 (2011).

In assessing whether a prior conviction qualifies as a violent felony, a district court generally applies a categorical approach, looking no further than the statutory definition of the offense and the judgment of conviction.  United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th Cir. 2010).  The Supreme Court recently held in Descamps v. United States, 133 S.Ct. 2276 (2013), that courts may use a modified categorical approach, which allows the sentencing court to look to a limited range of the facts underlying the conviction, only when necessary to "effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction."  Id. at 2283.  When applying the modified categorical approach, the sentencing court may only consult a "narrow universe" of documents, as listed in Shepard v. United States, 544 U.S. 13 (2005).  See

7

Palomino Garcia, 606 F.3d at 1336-37.  These documents include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard, 544 U.S. at 16.

Although we've never addressed whether Shepard-approved documents must be submitted to prove the existence of a predicate conviction under the ACCA's categorical approach, we have found docket sheets from a court clerk to be sufficiently reliable evidence for proving the existence of predicate offenses for a sentence enhancement.  See United States v. Brown, 526 F.3d 691, 710-13 (11th Cir. 2008), vacated on other grounds, 129 S.Ct. 1668 (2009) (concluding that uncertified docket sheets downloaded from a court's website were sufficient to prove that the defendant had a prior aggravated-assault conviction that would serve as a predicate for a career-offender sentence enhancement).  Moreover, we have rejected the need for any Shepard documents to prove the existence of a conviction serving as a predicate conviction for a sentence enhancement.  Id. at 710 (referring to the career-offender sentencing enhancement under the Sentencing Guidelines). Instead, the court may consider "any information, including reliable hearsay, regardless of the information's admissibility at trial, provided that there are sufficient indicia of reliability to support its probable accuracy."  Id. (quotation

8

omitted).  Finally, although we have noted that "the best approach would always be to produce a certified copy of the conviction," certification is not necessarily required when the evidence, "taken together," is "sufficiently reliable to support the court's finding" of a conviction.  Wilson, 183 F.3d at 1301.

Here, the district court did not err in relying upon the government's submitted documents to prove the fact of Northcutt's three predicate convictions for the ACCA enhancement.  First, certified docket sheets from a state court were sufficiently reliable to prove that Northcutt had been previously convicted of second-degree burglary and assault with intent to murder.  See Brown, 526 F.3d at 712.  As for proving the third predicate conviction -- for first-degree assault -- the copy of the judgment signed by the judge was sufficiently reliable, even in light of the proceedings' transcripts bearing inconsistent dates.  Also, because the court used the modified categorical approach to determine whether the first-degree assault was a violent felony, it properly relied upon the indictment as a Shepard document.  Thus, Northcutt's argument that he was ineligible for the ACCA sentence enhancement fails on the merits, and we affirm this claim.

**AFFIRMED in part, DISMISSED in part**.

9